IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| LAURA RUDDY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BLUESTREAM PROFESSIONAL SERVICES, )<br>LLC, )<br>)<br>Serve: Corporation Service Company )<br>      100 Shockoe Slip )<br>      2nd Floor )<br>      Richmond, Virginia 23219 )<br>)<br>and )<br>)<br>KGP TELECOMMUNICATIONS, INC., )<br>)<br>Serve: Corporation Service Company )<br>      100 Shockoe Slip )<br>      2nd Floor )<br>      Richmond, Virginia 23219 )<br>)<br>Defendants. )  | Civil Action No. _____ |

## COMPLAINT

COMES NOW the plaintiff, Laura Ruddy ("Plaintiff or "Ms. Ruddy"), by and through her undersigned counsel, John C. Cook, Esq., Broderick C. Dunn, Esq., Philip C. Krone, Esq, and the law firm of Cook Craig & Francuzenko, PLLC, and for her Complaint against the defendants, BlueStream Professional Services, LLC ("BlueStream") and KGP Telecommunications, Inc.

1

("KGP") (BlueStream and KGP are referred to collectively as "Defendants" or "KGPCo"), states as follows:

## NATURE OF THE CASE

1. This is an action brought under the Title VII of the Civil Rights Act of 1964 ("Title VII"), the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k) ("PDA") and the Family Medical Leave Act of 1993, 29 U.S.C. §§ 2601, *et seq.* ("FMLA") because Defendant terminated Plaintiff based on her gender and in retaliation for engaging in protected activity.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331.

3. This Court has personal jurisdiction over Defendants because it performed the acts complained of within this district.

4. Venue is proper in this district and in this division by virtue of 28 U.S.C. § 1391(b) because, among other reasons, a substantial part of the events or omissions giving rise to the claims occurred in the Eastern District of Virginia.

5. Plaintiff filed her Charge of Discrimination against Defendants with the Equal Employment Opportunity Commission on or about August 21, 2018. The EEOC issued a Right to Sue letter on September 5, 2018, and served Plaintiff with it thereafter.

## THE PARTIES

6. Plaintiff is an adult female resident of Loudoun County in the Commonwealth of Virginia.

7. BlueStream is a Minnesota limited liability company whose principal office address is 3305 Highway 60 West, Faribault, Minnesota 55021. BlueStream is licensed to do business in

Virginia and its registered agent, Corporation Service Company, is located at 100 Shockoe Slip, 2nd Floor, Richmond, Virginia 23219.

8. KGP is a Minnesota corporation whose principal office address is 3305 Highway 60 West, Faribault, Minnesota 55021. KGP is licensed to do business in Virginia and its registered agent, Corporation Service Company, is located at 100 Shockoe Slip, 2nd Floor, Richmond, Virginia 23219.

## FACTS

9. Plaintiff began her employment with Defendants in August of 2015 when she was hired as Defendants' Recruiting Manager. Plaintiff worked out of her home office in Loudoun County, Virginia.

10. Plaintiff's initial salary was $90,000 per year and Plaintiff was eligible for a ten (10) percent yearly bonus.

11. Plaintiff initially reported to Scott Della Valle ("Mr. Della Valle"), Defendants' Vice President of Mobility.

12. Shortly after Plaintiff began working at KGPCo, Mr. Della Valle mentioned a male recruiter who was about to go on FMLA/paternity leave following the birth of the recruiter's child. Mr. Della Valle criticized the recruiter, stating that "[m]en shouldn't need to take paternity leave…the woman is the one who stays home and is responsible for taking care of the babies!"

13. Plaintiff was so bothered by Mr. Della Valle's comments that she made a mental note to hide any pregnancy of hers for as long as possible before informing Defendants.

14. On November 1, 2015, Plaintiff began reporting to Defendants' new director of human resources, Tara Taylor ("Ms. Taylor"), instead of Mr. Della Valle.

15. From December of 2016 through March of 2017, Plaintiff went out on FMLA/maternity leave for the birth of her first child.

16. When Plaintiff returned to work for Defendants, Plaintiff was placed in an unofficial Project Management Office ("PMO") Manager role in support of a recently awarded project with Nokia on March 15, 2017.

17. Nokia represented one of Defendants' largest contracts and Plaintiff was assigned to her new role by Ms. Taylor because of Plaintiff's skill and experience managing similar projects for a previous employer.

18. In her role as PMO Manager, Plaintiff was responsible for hiring and negotiating the rates of over two hundred fifty (250) Field Technicians as well as deploying them to markets across the United States. Plaintiff was also developing processes and then managing the staffing budget, time card best practices, staffing vendor contract addendums, as well as coordinating the training and development of Field Technicians to market.

19. On August 1, 2017, Defendants' Training Project Manager, Vincent Briggs ("Mr. Briggs"), resigned. Because of Nokia project requirements, Plaintiff was asked to backfill Mr. Briggs' roles and responsibilities in addition to performing her job, resulting in many extra hours worked per week.

20. Plaintiff asked Phil Dudek ("Mr. Dudek"), Defendants' PMO Director, and Ms. Taylor for additional support in managing Plaintiff's job and Mr. Briggs' job. Plaintiff also informed them that she was pregnant again and would be going out on maternity leave in November of 2017. Both Mr. Dudek and Ms. Taylor agreed to that they would either hire a coordinator to assist Plaintiff or hire a new Training Project Manager to prevent Plaintiff from having to perform two roles without support.

21. After Plaintiff assumed the role of Training Project Manager on August 1, 2017 following Mr. Briggs' departure, Plaintiff began working with Ben Thompson ("Mr. Thompson"), Nokia's Project Coordinator and Plaintiff's client-side point of contact.

22. Mr. Thompson immediately expressed his excitement about working with Plaintiff. Mr. Thompson further insisted that all communications from KGPCo managers, staffing vendors and contractors go through Plaintiff.

23. In mid-September of 2017, Plaintiff informed Mr. Thompson that she was pregnant. Mr. Thompson's behavior towards Plaintiff changed immediately. Mr. Thompson began treating Plaintiff differently than similarly situated, non-female, non-pregnant KGPCo employees.

24. Specifically, Mr. Thompson sent Plaintiff hostile emails and verbally castigated Plaintiff frequently. The tone and tenor of Mr. Thompson's communications with Plaintiff was so caustic that between September 20, 2017 and October 5, 2017, Plaintiff complained about Mr. Thompson's disparate and hostile treatment to Ms. Taylor in writing and verbally on several occasions.

25. Despite Plaintiff's complaints, Ms. Taylor and KGPCo did nothing to investigate, mediate or otherwise address Plaintiff's complaints.

26. Ms. Taylor informed Mr. Della Valle about Plaintiff's complaints about Mr. Thompson on or about October 7, 2017. Ms. Taylor also informed Mr. Della Valle that Plaintiff was pregnant again and that she would be taking maternity leave in November. Mr. Della Valle informed Ms. Taylor in response that he would institute a reduction in force (the "RIF").

27. On or about October 11, 2017, just one week after Plaintiff's latest complaint about Mr. Thompson and days after Mr. Della Valle learned that Plaintiff was pregnant again and would

need to go out on maternity leave starting in November for the second time in less than a year, Mr. Della Valle asked Ms. Taylor to terminate Plaintiff.

28. Ms. Taylor requested that Defendants hold off on terminating Plaintiff immediately. Mr. Della Valle agreed but said that Plaintiff had to be terminated by the end of October, before she went out on maternity leave in November.

29. On October 24, 2017, Ms. Taylor informed Plaintiff that Defendants finally hired a person to support Plaintiff per Plaintiff's August 1, 2017 request.

30. On October 25, 2017, Ms. Taylor called Plaintiff and informed her that Defendants were terminating her as part of the RIF and that Plaintiff's last day would be October 27, 2017.

31. Even though Plaintiff was a top performer, as evidenced by her most recent evaluation, and even though Defendants' project with Nokia was in full swing, Plaintiff was the only KGPCo employee in the HR/Recruiting Department subject to the RIF. In fact, Defendants hired three, full-time recruiters around the same time they terminated Plaintiff.

32. A young male employee who started the week after Plaintiff's termination was given all of Plaintiff's responsibilities.

33. Plaintiff was damaged by Defendants' termination during the third trimester of Plaintiff's pregnancy. Due to the stress and anxiety of Mr. Thompson's treatment of Plaintiff, Defendants' failure to address such treatment and Defendants' termination of Plaintiff, Plaintiff's mental and physical health, and that of her fetus, declined.

34. Plaintiff was put on strict bed rest for the remainder of her pregnancy and delivered her baby prematurely at 36 weeks.

35. Instead of bonding with her child during her maternity leave as Plaintiff would have done had Defendants not terminated her, Plaintiff suffered continued mental anguish and financial

hardship. Plaintiff's salary was twice that of her husband's and without her income, the family struggled financially.

36. Plaintiff was diagnosed with post-partum depression, a condition from which she did not suffer following her previous pregnancy.

## Count I

**(Termination of Plaintiff's Employment Under Title VII and the Pregnancy Discrimination Act)**

37. Plaintiff restates the allegations contained in paragraphs 1 through 36 of Plaintiff's Complaint as if fully set forth herein.

38. Plaintiff is female and was pregnant.

39. Plaintiff suffered an adverse employment action when Defendants terminated her employment.

40. At the time of Plaintiff's termination, Plaintiff was performing her job at a level that met Defendants' legitimate job expectations as evidenced by Plaintiff's reviews.

41. Plaintiff's position was filled by a similarly qualified, male employee.

42. Plaintiff was terminated because she was pregnant (and therefore because she was female).

43. As a result of Defendants' actions, Plaintiff has suffered wage loss, emotional distress and attorneys' fees.

## Count II

**(Retaliation Under Title VII and the Pregnancy Discrimination Act)**

44. Plaintiff restates the allegations contained in paragraphs 1 through 36 of Plaintiff's Complaint as if fully set forth herein.

45. Plaintiff engaged in protected activity when she reported Mr. Thompson's behavior to Ms. Taylor on several occasions between September 20, 2017 and October 5, 2017. Mr. Thompson's behavior was hostile toward Plaintiff, and not others, because Plaintiff was pregnant.

46. Defendants took an adverse employment action against Plaintiff when they terminated her employment on October 27, 2017.

47. A causal connection existed between Plaintiff's complaints about Mr. Thompson and Mr. Della Valle's decision to terminate Plaintiff.

48. As a result of Defendants' actions, Plaintiff has suffered wage loss, emotional distress and attorneys' fees.

## Count III

### (FMLA Retaliation)

49. Plaintiff restates the allegations contained in paragraphs 1 through 35 of Plaintiff's Complaint as if fully set forth herein.

50. Plaintiff engaged in protected activity when she notified her employer of her intention to take FMLA leave.

51. Defendants took an adverse action against Plaintiff when they terminated her based on her decision to take FMLA leave in November of 2017.

52. Plaintiff's termination was causally connected to her intention to take FMLA leave as evidenced by Mr. Della Valle's previous comments about paternity leave and his decision to terminate her less than one week after learning that Plaintiff was pregnant again, and instructing that her termination occur before her leave would begin.

53. As a result of Defendants' conduct, Plaintiff has suffered lost back pay, lost front pay, liquidated damages and attorneys' fees.

WHEREFORE the plaintiff, Laura Ruddy, demands judgment against the defendants, BlueStream Professional Services, LLC and KGP Telecommunications, Inc., as follows:

(a) For Count I, past and future lost wages in the amount of $1,000,000, punitive damages in the amount of $300,000 and compensatory damages in the amount of $300,000;

(b) For Count II, past and future lost wages in the amount of $1,000,000, punitive damages in the amount of $300,000 and compensatory damages in the amount of $300,000;

(c) For Count III, $1,000,000 in lost back pay and front pay and $1,000,000 in liquidated damages;

(d) Plaintiff's attorneys' fees as provided by Civil Rights Act of 1964, § 701 *et seq.*, 42 U.S.C.A. § 2000e *et seq.*, and 29 U.S.C.A. § 2617 *et seq.*; and

(e) Pre-judgment interest, post-judgment interest and all other further relief that this Court deems just and proper.

### JURY DEMAND

Plaintiff demands a jury on all issues so triable.

Respectfully submitted,

John C. Cook, VSB 38310
Broderick C. Dunn, VSB 74847
Philip C. Krone, VSB 87723
Cook Craig & Francuzenko, PLLC
3050 Chain Bridge Road, Suite 200
Fairfax, VA 22030
Phone: (703) 865-7480
Fax: (703) 434-3510
jcook@cookcraig.com
bdunn@cookcraig.com
pkrone@cookcraig.com
*Counsel for Plaintiff*